(No. 3360—

PRISCILLA BOWERS, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed February 10, 1942.*

LAWRENCE A. GLENN, for claimant.

GEORGE F. BARRETT, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

FISHER, J.

This claim was filed February 8, 1939, for Four Thousand Dollars ($4,000.00). Frank Bowers, the deceased husband of claimant, was employed as a fireman at the Southern Illinois Normal University and on November 10, 1938, while engaged in his usual duties as a fireman in the boiler room of said institution was cleaning a steam driven feed pump when the index finger of his right hand was caught between the arm and piston of the pump, and said finger was completely severed between the nail and first joint. Subsequent thereto, on December 11, 1938, he died from an alleged embolism as a result of the said injury. The complaint alleges that the deceased had worked for thirty-three years prior to the date of his accident as a fireman in the said Southern Illinois Normal University, that at the time of his death he left him surviving his widow, Priscilla Bowers, claimant, who was fully dependent upon him for support.

The medical and surgical treatments were furnished and paid for by the employer, except the sum of Thirteen and 65/100 Dollars ($13.65) advanced by Dr. Fred S. Etherton for anti-tetanus serum.

The record in this case consists of claimant's complaint, amended complaint, the report of the Department of Registration and Education signed by Roscoe Pulliam, President of Southern Illinois Normal University, transcript of the evidence, a motion on behalf of the claimant to omit claimant's Exhibit 2 as part of the record, the abstract of the evidence and the respective statements, briefs and arguments of the parties hereto.

The accident in this case occurred on November 10, 1938, the respondent had knowledge of the accident on the day on which it occurred, claimant's husband died on December 11, 1938, and this claim was filed on February 8, 1939. It would therefore appear that all the jurisdictional requirements of Section 24 of the Workmen's Compensation Act were complied with in this claim.

A number of decisions of the Court of Claims are cited in the respondent's brief showing the various occupations and

employments of persons working for the State and injured while in such employment to whom, or to whose dependents an award has been allowed. It would appear that among the cases cited there are several of such similarity to the occupation of the claimant's deceased husband as to be controlling in the present claim.

The courts of a number of states, including the Supreme Court of Illinois, have decided that circumstantial evidence is sufficient as to the occurrence of an accident. It appears that the claimant's deceased husband's injury arose during the course of his employment, that is during his normal working hours and at his place of employment. Whether or not it arose out of his employment is a question which must also be decided favorably to claimant before an award can be made. The deceased, Frank Bowers, made a statement to his fellow employee, Samuel Stokes, immediately after accident calling attention to his injury which, under the conditions made, is a part of the res gestae. The record also contains the testimony of the deceased's fellow fireman, Samuel Stokes, and the testimony of the deceased's superior, the engineer, F. A. Burke, regarding the circumstances of Frank Bowers' accident. From all the evidence this court is of the opinion that the accident arose out of the deceased's employment, and we so find.

The other question which this court must determine is whether Frank Bowers' death was the result of the accidental injury suffered by him on November 10, 1938.

It is contended that Frank Bowers died as the result of an embolism, and there are included in the respondent's brief several quotations from medical books as to embolism. It appears that an embolism may be composed of a minute particle of fat, clotted blood, an air bubble, or a foreign substance in the blood stream. It further appears that a fat embolism occurs most frequently where there has been a fracture of a bone and the fat from the marrow of the bone gets into the blood stream, either because of the trauma and the injury to the bone or the manipulation of the attending physician in restoring the parts of the bone to their proper position. It also appears that an embolism composed of clotted blood, or even other substances which may be in the blood stream although foreign to it may result either from an opening in the tissues with the resulting coagulation of the blood

or the entrance therein of some foreign substance including air, or that such a coagulated blood particle which constitutes the embolus may be part of a thrombus, which is a clot within the arteries or veins, or even occasionally the heart itself. Such latter embolus results when a part of the thrombus is separated from the fixed and parent body and becomes a movable clot travelling throughout the blood stream until such time as it reaches a place in the artery carrying such blood stream which is too narrow to permit the passage of such embolus, when a stoppage results and a physical disability, sometimes even death, follows. It appears, therefore, that an embolus may result from a fracture of a bone, even though the fracture is not of the compound type and no part of the bone protrudes through the surrounding tissues. It also appears that an embolus may be formed where there is no fracture but where, because of external lacerations there was a clotting of the blood, and likewise where an operative procedure is necessary and as a part thereof certain parts have been severed. In the latter case in the healing process blood clots are formed and if these get into the circulatory system as such, rather than as being reabsorbed into the blood stream, disaster results.

However, it also appears that embolism needs neither a fracture nor an incision, nor trauma, so that blood collects as in the case of a black eye, but may be merely a particle that is broken off from a thrombus which is an unnatural growth.

The question in this case to be decided by the court is whether or not Frank Bowers actually died as a result of an embolus, and if so, whether such embolus was a result of the fracture and traumatic amputation which he suffered, or whether such death causing embolus was merely one of a series, others of which he had suffered on November 27th and December 9th, and all of which came from the same parent thrombus.

Had an autopsy or post mortem examination been performed in this case, this question undoubtedly would have been definitely determined, but as this was not done this court must arrive at its conclusion from the evidence before it and the reasonable inferences that can be drawn therefrom. The law is well settled that the liability of the respondent cannot be rested upon a choice between two views equally compatible with the evidence. The deceased was attended by Drs. M.

and Fred S. Etherton. They both testified that the deceased was a man of good health and cheerful disposition, that they did not know of any physical ailment he had prior to the date of his accident, that his death was caused by an embolus resulting from the accident he received on November 10th, and that it was either a fat embolus or a blood embolus produced by his injury.

This court is of the opinion, from the evidence, that the deceased, Frank Bowers, died from an embolus which had its inception in the traumatic amputation of the finger, and it was caused by the accident suffered by him on November 10, 1938. To conclude otherwise would be to indulge in conjecture and to accept inferences and suppositions not supported by the evidence.

The deceased earned the sum of Fourteen Hundred Dollars ($1,400.00) a year. The court therefore finds that claimant is entitled to an award in the sum of Four Thousand Dollars ($4,000.00), being the maximum allowed under the terms of the Workmen's Compensation Act, which is payable at the rate of Thirteen and 46/100 Dollars ($13.46) per week starting from the time of Frank Bowers' death, as follows, to-wit:

(1) The sum of Two Thousand Two Hundred Thirty-four and 36/100 Dollars ($2,234.36), which amount covers a period of one hundred sixty-six (166) weeks from the date of his death, December 11, 1938, to and including February 15, 1942, is payable forthwith;

(2) The balance of said award, to-wit: One Thousand Seven Hundred Sixty-five and 64/100 Dollars ($1,765.64), is payable in one hundred thirty-one (131) weekly installments of Thirteen and 46/100 Dollars ($13.46) each, commencing February 22, 1942; and one (1) final installment of Two and 38/100 Dollars ($2.38);

(3) A further award is hereby allowed to Dr. Fred S. Etherton in the sum of Thirteen and 65/100 Dollars ($13.65) to reimburse him for the cost of anti tetanus serum which he administered to the deceased.

This award being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved June 30, 1941, and being by the terms of such an Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Fund in the manner provided for in such Act.